Good morning, may it please the court. I request the court to allow me two minutes before we vote on this motion. Yes, you may have that. Okay, your honor. May it please the court. Exclusion of all the evidence in support of defendant's defense except for her own uncorroborated and unsupported testimony constitutes in this case a violation of defendant's constitutional right to present a complete defense and it is a reversible error. Exclusion of the testimony of the expert witness about the characteristics and consequences of the battered woman syndrome because it was unnecessary is contrary to the law. In theory, the district court accepted in this case that testimony of an expert witness to explain the battered woman syndrome in general could be introduced either in support of a defense of duress or to negate the requisite criminal intent. However, when the time came at trial to introduce the expert testimony about the battered woman syndrome after the defendant's testimony of the beatings, violence, and fear, the district court ruled that expert witness was unnecessary because in his opinion it was a matter of credibility. In other words, the defendant was curtailed in the presentation of her defense because the district judge understood that her testimony was enough. With all due respect, the district judge observed the reality of the defense and the jury. Counsel, as I understand it, the syndrome that you're talking about or the testimony you're talking about is often offered to explain why one spouse does not leave another even though they're being subjected to beatings. So it rebuts any argument that the failure to leave or kick the person out somehow undercuts the allegations of abuse. As I understand it here, though, your client, after three months of living with Rivera, kicked him out and was no longer living with him. So if my understanding is correct, then I'm having a little trouble understanding exactly what was the point that the expert would have testified to that would have added something to your case. Your Honor, even if she kicked him out, he was still after her, he was threatening her to come back with him. In fact, he was telling that she was his woman and that he cannot be left by any woman. And the importance of the expert testimony is precisely that, because it would help the jury understand how a reasonable person reacts to repeated beating and emotional abuse. Providing the jury with information of a specific incidence of abuse while providing no information, how about such treatment can over time establish a dynamic where the threat of abuse hovers over every interaction between the individuals. Even if those such threats are not always articulated will give the jury only half of the story. Excuse me, but in the testimony that she gave does show that he objected to her kicking him out and he said, you're my woman, and he said, I'm coming back. But as I understand it, she resisted all of that. She kicked him out and she didn't let him move back. So how does testimony about that then support a claim that she couldn't resist his insistence that she commit a crime? Well, first of all, when she came with him to the place where they were going, she didn't know that she was going to commit a crime. She got inside that apartment without knowing what was going to happen. He entailed her into that, going with him under other pretenses. But that's a different issue, isn't it? I mean, if she didn't know she was committing a crime, then you don't need the battered wife syndrome to say anything. Well, why? Because why she reacted during the drug transaction that the jury could see in the video, how she reacted when she found that it was a drug transaction, and why she played along with his victimizer and never said anything after she left, is why the expert witness would have explained what happened when a woman has been subjected to all the violence that are characterized in the battered woman syndrome. It would help the jury understand the victim's perception and danger of grave bodily harm if imitated, revolting the prosecution inference that the defendant could have left rather than stay during the drug transaction. It is like the mental state of hostages, prisoners of war, traumatic syndrome, that is not easily understood by the general public. The judge might have understood because of his experience, and that's where the judge failed, because he intercepted his own personal saying of her testimony. He didn't require to have an expert to tell him that a person under that certain violation and abuse would respond as she responded during the video, but that's not the jury, and the jury is the ultimate determination of facts, and that's why it would have been helpful to understand also how the expert commonly has missed more here in Puerto Rico regarding domestic violence among general people in the community from where the jurors come. The ultimate place to blame for battering on the battered victim or the battered woman is free to leave as the court is not. I'm sorry, I may have misunderstood what you just said, but are you saying in Puerto Rico there is a special battered women's syndrome and that your expert was going to talk about that in the context of the Puerto Rican community? I understand. That's what I understood you to just say. What I'm saying is as to the jurors, the jurors are confronted many times here, probably in the States also, but in Puerto Rico it's an ill that we have about battered women's syndromes, domestic violence, the submission of the money. But that seems to support the judge's view, not your view. If it's a common experience of the jurors here and she has testified and testified repeatedly to abuse, what does the expert add? The expert would add what many people in Puerto Rico does not understand. In Puerto Rico, and I'm saying in the States, is when a woman is subjected to this violence and this abuse, even if she has left him, she is still under his control. And that's what many, the common people does not understand. And the common people thinks that she can leave, that if she left him, even if he wants again to do something to her, she can battle that and there will be no subjection. That's what the expert obviously is more helpful. Okay, thank you, that's helpful. I have a question for the government about this case, which is not the expert testimony, but the exclusion of the prior conviction for domestic abuse. It seems to me that that prior conviction tends to support the reasonableness of the defendant's belief that she would in fact be injured if she did not follow the dictates of the man that she was with. What's the government's response? It would seem to me that it's plainly material. Good morning, Your Honors. Monique Abershami for the United States. Your Honor, I think that that testimony may have been more relevant or material even, had the testimony by the defendant been, I knew of this prior abuse, and therefore I knew he would carry out what he was saying he would carry out. But is the testimony ambiguous on that point? Your Honor, my reading of the record and hearing the defendant is that there was actually no testimony regarding her personal knowledge of any prior instances of abuse by Juan Roberto. In which case, the relevance would only lead towards telling the jury he's done this before and he's doing it again. But without the connection that she knew of the prior domestic violence conviction. Precisely. Therefore, her testimony was that she had personally experienced abuse from him. And therefore, she did tell the jury she believed his threats regarding that specific day, April 14th of 2001. Did he ever say to her, look, I've beaten up the women in my life before you. Believe me, when I tell you, I will injure you if you don't do what I want. I do not believe that that is in the record. Okay. What is in the record? What did her testimony amount to? She testified, she started from her own personal experience with two prior partners who had abused her. To give the context for why it was that she was so vulnerable for Juan Roberto. Then she went into the testimony regarding her personal experience with Mr. Roberto. She said that they had been together. Actually, not living together, but rather just dating each other for about two and a half months. During the course of which time she got a tattoo commemorating her love for him. At which point, her testimony is that she broke the relationship off. She noticed that he was violent and she ended the relationship. From that point, her testimony was that that was about November of 2009 until about April of 2010. She stated that throughout that point there were instances of violence against her. And that she would ask him to stop calling her and that he would call her. Her testimony, however, elicited on cross-examination was that he owed her $8,000. Money that she said she did not need. And she nevertheless both accepted his assertion that he could pay in installments, which of course necessarily kept him in her life, and also communicated to him regarding that money. That was not testimony on direct, that was elicited on cross. And so it is the government's contention that she, to the extent that she is presenting a defense regarding the behavior of Wendo Rivera Ruperto, it is a duress defense aimed exclusively at April 14, 2010 and what happened before that specific date. So the judge found, and the government does not believe that this is either material error or obvious mistake, that she was able completely to explain her duress defense on the stand. Which is in the same way that if someone had been saying, for example, a Colombian drug cartel is threatening me and therefore I have to be a part of this drug transaction. She said that he threatened her, said that she had to get into the car with him. Her testimony is that she did not know what for until her testimony. She was in the apartment and she saw the drugs. At that point, this is no longer any issue of whether or not she had specific intent. Her testimony was that she knew what she was doing, and in fact, she specifically did that because she was acting for her life. That if she didn't act natural, he would harm her and harm her son. That's a classic duress defense. There's no need for an expert to explain what a jury could fully understand, which is that if someone, had they believed her, if someone is threatening her and threatening her son, she had no choice but to continue to participate and to keep her mouth shut. That's the testimony. The trial judge seemed to say that if what she related is true, then any jury would have to acquit her, so therefore the expert really added little to that. That led me to ask, as I read the closing from the prosecutor, it seemed to me that didn't the state argue not just that what she said wasn't true? In other words, she wasn't really under this duress. But it seemed to me there was some suggestion that the government also argued that even if what she said was true, a reasonable person wouldn't have given in. Is that a correct reading of the prosecutor's closing? Yes, that was actually my closing, and my argument on closing was not just... I also argued on closing that taking what she said as true, I also argued that she had an opportunity to escape, whether as a person who had an experience with threats or just a reasonable person. And that opportunity to escape happened when the other members of the party who were in the apartment were on the balcony, and she had 45 seconds alone with access to the key to exit the apartment. Do you see any tension between that argument and the grounds given by the district court judge in excluding the expert testimony, where he seemed to say that he didn't think the jury could buy that argument, that even if what she said was true, she still should have resisted? I think honestly, Your Honor, the judge did not buy that particular portion of my closing argument. I think that what the judge was basing his assessment of the defendant's testimony was that if she were actually under threat of her life, then running away from the apartment does not keep her or her son safe. And I think that was the judge's assessment, that if the jury believed her testimony, that she was indeed under that level of immediate threat. I mean, this is actually unrelated to months of prior interaction with Wendo Rivera Ruperto, other than to give her a reasonable belief that he would carry it out, but that she was under immediate threat, and therefore leaving the apartment in those 45 seconds would not have solved her problem. The government, in our closing, we just went a little bit further and argued that to the jury. So that's sort of an implicit, if the jury believed her, they necessarily would have rejected the government's additional argument that she could have escaped, because that would not have eliminated the injury requirement. And therefore, the jury didn't believe her on her basic testimony about duress. Did she ever refer to the battered women syndrome? Did she ever put herself in that psychological category? She did not use the terms battered women syndrome. What the judge's order at that point, at the point of her testimony, was that he had not yet ruled on how the expert would be relevant. So what the defendant did on the stand was set the stage for every part of what the expert would have testified to regarding battered women syndrome. The judge gave her a fair amount of leeway to describe her life history, including instances of abuse with prior partners, and her entire history with Wendell Roberto, going considerably farther back, months back, from what happened in April of 2010, so that she could present a complete picture to the jury regarding her personal relationship with this man, and why a reasonable person with that prior relationship with this man would have found his threats to be credible, and why he wouldn't have left. And the judge's decision to exclude the expert testimony was essentially a 702 decision, just this would not assist the jury with any facts that would be relevant to the case. She had given a full and complete defense. She gained something out of participation in this, didn't she? In the drug transaction, Your Honor? Yeah. Yes. The government believes that each member of the conspiracy, although, excuse me, she was acquitted of conspiracy, so I should say both Wendell Roberto and Yamila Ramirez received $2,000 apiece. She left with all $4,000 in her purse, and the government, presumably, she shared the proceeds with the other person she was there with. Her testimony was that she rejected all of the money after leaving. The government presented a rebuttal witness, which was a special agent that she spoke to, to whom she did not, actually, Your Honors, I'm momentarily forgetting what his testimony was, but I do not believe, I believe that he said that she did not tell him that she had thrown the money away. Counsel, I'm interested in another issue, but you only have a few seconds left, so if you could try to do this very quickly. With respect to the claim of sentencing manipulation, as you say, the jury found her not guilty of conspiracy, suggesting that they didn't find beyond a reasonable doubt that she knew what she was headed for when she went to the apartment. So what does that say about predisposition, or does it have no role in that issue when it comes to sentencing? Your Honor, I believe that there are two ways of interpreting the jury's verdict. One is the information that Your Honor just gave. Another is that the testimony regarding her, the testimony regarding her agreement with Juan Roberto Ruperto prior to coming to the transaction were phone calls with Mr. Roberto Ruperto, and it's possible that they wanted to hear her voice as to the agreement, not necessarily as to her intent to participate in the transaction at all, but as to her agreement. And then you could say, then, that under, still with the jury's verdict, she intended, they rejected her claim that she was there under threats. She intended to participate in the drug transaction, but they did not know if she had entered into any sort of agreement with Mr. Roberto Ruperto prior to coming. Having said that, though, regarding her predisposition, in the appellant's reply brief, there's a discussion of another case, a co-defendant of Yamila Ramirez, which is José Nieves Vélez, before this judge. And his real concern in that case was the fact that that defendant was not a police officer, and that was the real rub in that case. He heard Ms. Navero Ramirez's testimony, the judge. The district judge also heard what José Nieves Vélez had to say, and he apparently did not accept Yamila Ramirez's testimony regarding her predisposition. His factual finding was that he just did not accept that. And what he found from José Nieves Vélez was that he appeared to have believed him when he said he did not know he was going there. And I suppose it doesn't matter anyway if there's no impropriety in the sting operation itself. Predisposition really isn't relevant. Precisely. Yeah. Thank you. Thank you, Your Honors. May it please the Court. Precisely because of the ambiguity as to what the judge understood of her credibility and what was told to the jury, that's more important that an expert explain the situation, because this is a mental state. And a person who is suffering from this syndrome has a different mental state than a reasonable person who has reacted in a similar situation. And the jury also was faced with a video where she appears doing things which they can make inferences from that video. That's why the expert would have explained why she acted in the way she acted during the video that they said, because that's the only thing the jury has, and her testimony. So we understand that she has a constitutional right to present a defense, which the district judge did not allow her to complete a complete defense. Did she testify, by the way, that she knew he had had a prior domestic violence conviction? I understand no. No as to that. I imagine that if she would have done, the judge would not have allowed her to testify because that was excluded before trial. Was there any offer of proof that she would draw the connection between what her knowledge and the prior conviction? No, that I understand. Okay. Your Honor, as to the other case, the person who was granted a reduction because manipulation of evidence of the drug did not testify before the court. So it was only the testimony of her, and she was in a better position than this other co-defendant that he was granted a reduction in the amount of drugs that was not granted to her. I understand they were both in the same position. In terms of the fake cocaine, what was the amount in this case? It was 10 kilograms. Ten. The statutory minimum.